**STONYBROOK CONDOMINIUM ASSOCIATION**

v.

**JOCELYN PROPERTIES, INC., Appellant.**

Commonwealth Court of Pennsylvania.

Argued Nov. 2, 2004.

Decided Dec. 6, 2004.

John J. Koresko, V, Bridgeport, for appellant.

Matthew Brown, Blue Bell, for appellee.

BEFORE: PELLEGRINI, Judge, FRIEDMAN, Judge, and JIULIANTE, Senior Judge.

OPINION By Judge FRIEDMAN.

Jocelyn Properties, Inc. (Jocelyn) appeals from the October 8, 2003, order of the Montgomery County Court of Common Pleas (trial court), granting summary judgment in favor of Stonybrook Condominium Association (Association) in the Association's suit to recover unpaid condominium assessments, late fees, costs and legal fees from Jocelyn. We affirm.

Stonybrook is a residential condominium development located in Montgomery County. The condominium units at Stonybrook are governed by the terms of the Declaration Creating and Establishing Stonybrook Condominium (Declaration). In accordance with the Declaration, the Association imposes a monthly assessment on each unit at Stonybrook, and these assessments "shall constitute the personal liability of the unit owner of the unit so assessed and shall, until fully paid, together with interest thereon provided by law, constitute a charge against such unit. . . ." (Trial ct. op. at 2.)

Jocelyn purchased a condominium unit from Vincent C. Bivona, a/k/a Vincent C. Bivona, III (Bivona), by deed executed April 14, 2000, and recorded in the Office of the Montgomery County Recorder of Deeds. (Trial ct. op. at 1–2.) From April 14, 2000, through October 9, 2001, when Jocelyn conveyed the unit to Bivona, Inc., the Association, pursuant to the Declaration, assessed Jocelyn condominium fees in the amount of one hundred eighty-six dollars ($186.00) per month in the year 2000 and one hundred ninety dollars ($190.00) per month in 2001. In addition, the Association imposed a monthly late charge of thirty-one dollars on unpaid and overdue assessments. (Trial ct. op. at 2.) Jocelyn failed to pay any condominium fees between April and November of 2000. The Association received its first payment from Jocelyn on December 27, 2000, after which Jocelyn continued to pay the monthly assessments until September 19, 2001.[1] (Trial ct. op. at 3.)

---

1. Although the December payment was late, Jocelyn paid only one hundred eighty-six dol-

On November 20, 2000, the Association filed a Complaint in the trial court against Jocelyn to recover unpaid assessments, late fees, legal fees and costs in the amount of six thousand seven hundred forty-three dollars ($6,743.00) plus interest and all attorneys' fees and costs accrued through the date of judgment.[2] Following discovery and a hearing before a Board of Arbitrators, an award was entered for the Association in the amount of six thousand seven hundred forty-three dollars ($6,743.00). Jocelyn subsequently appealed this award and demanded a jury trial. (Trial ct. op. at 3–4.) However, with pleadings closed and discovery completed, the Association filed a motion for summary judgment to which Jocelyn filed an answer and cross motion for summary judgment.[3] By order dated October 8, 2003, the trial court denied Jocelyn's cross motion and granted the Association's motion for sum-

mary judgment, awarding a judgment against Jocelyn in the amount of ten thousand nine hundred forty-seven dollars and fifty cents ($10,947.50). Jocelyn now appeals this order. (Trial ct. op. at 4.)[4]

Jocelyn asserts that the trial court erred in granting the Association's motion for summary judgment and denying Jocelyn's cross-motion for summary judgment.[5]

Initially, Jocelyn argues that it was not the "owner" of the unit responsible for paying the condominium assessment fees.

Jocelyn does not dispute that it purchased the unit from Bivona by deed executed April 14, 2000, and recorded in the Office of the Montgomery County Recorder of Deeds. Nor does Jocelyn dispute that the face of the deed used the language "Grantor [Bivona] does hereby *grant and convey* to said Grantee [Jocelyn]: All that certain lot or piece of ground with build-

lars ($186.00) and did not include the late fee of thirty-one dollars ($31.00).

2. Jocelyn filed preliminary objections with the trial court, and the Association amended its Complaint. Jocelyn filed a second set of preliminary objections which were overruled by the trial court on May 31, 2001. Thereafter, on June 18, 2001, Jocelyn filed its answer to the Association's Amended Complaint. (Trial ct. op. at 3.)

3. Both parties submitted briefs on their requests for summary judgment and argued before the trial court. (Trial ct. op. at 4.)

4. Jocelyn filed its appeal with the Superior Court of Pennsylvania, which properly transferred the matter to this court. (Trial ct. op. at 4.) The Commonwealth Court of Pennsylvania, not the Superior Court of Pennsylvania, has jurisdiction over this appeal because this case involves an action by a condominium association for collection of fees and costs. Section 762(a)(5)(i), (ii) of the Judicial Code, 42 Pa.C.S. §§ 762(a)(5)(i), (ii). *See also* Pa. R.A.P. 751 and *Mayflower Square Condominium Association v. KMALM, Inc.*, 724 A.2d 389 (Pa.Cmwlth.1999).

This court's scope of review of the trial court's decision to grant or deny a motion for summary judgment is limited to determining whether the trial court committed an error of law or abused its discretion. *Corrigan v. Central Tax Bureau of Pennsylvania, Inc.*, 828 A.2d 502 (Pa.Cmwlth.), *appeal denied*, 576 Pa. 715, 839 A.2d 354 (2003); *Pennsylvania State Police v. Klimek*, 839 A.2d 1173 (Pa.Cmwlth. 2003), *appeal denied*, —— Pa. ——, 857 A.2d 681 (2004).

5. Summary judgment may be granted in whole or in part, "whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report...." Pa. R.C.P. No. 1035.2(1). Grant of summary judgment is proper only where, viewing all the facts in the light most favorable to the nonmoving party and resolving all doubts as to the existence of material fact against the moving party, the moving party is entitled to judgment as a matter of law. *Mayflower Square.* The party moving for summary judgment has the burden of proving that no genuine issue of material fact exists. *Id.* Summary judgment may be granted only where the moving party's right is clear and free from doubt. *Id.*

ings and improvements ... known as 1202 Stonybrook Drive." (Trial ct. op. at 9, R.R. at 93) (emphasis added). However, Jocelyn contends that mere use of the words "grant and convey" in the deed does not necessarily make the transfer a deed in fee simple where this type of deed is contrary to the intent of the parties.

■ The Association contends that use of the words "grant and convey" in the deed necessarily indicates the transfer of a fee simple property interest in the unit from Bivona to Jocelyn,[6] enabling the Association to recover from Jocelyn the unpaid condominium assessments, late fees, costs and legal fees which accrued while Jocelyn owned the condominium unit. As support for this proposition, the Association cites Section 1 of the Act of April 1, 1909, P.L. 91, *as amended* 21 P.S. § 2, entitled "Deeds and General Provisions," which states:

> [I]n any deed or instrument in writing for conveying or releasing land hereafter executed, *unless expressly limited to a lesser estate,* the words *"grant and convey,"* or either one of said words, *shall be effective to pass* to the grantee or grantees named therein *a fee simple title to the premises conveyed,* if the grantor or grantors possessed such a title, although there be no words of inheritance or of perpetuity in the deed.

21 P.S. § 2 (emphasis added).

Notwithstanding the clear language of 21 P.S. § 2, Jocelyn relies on *Pennsylvania Bank and Trust Company v. Dickey,* 232 Pa.Super. 224, 335 A.2d 483 (1975), for the proposition that the words "grant" and "convey" do not necessarily create a fee simple estate interest. However, like the trial court, we conclude that *Pennsylvania Bank* is unpersuasive and readily distinguishable from the present matter.[7]

In *Pennsylvania Bank,* the deed contained the following language: "the party of the first part ... do[es] hereby *grant,* demise, lease, and let, unto the parties of the second part ... the *exclusive* right *for the sole and only purpose of drilling and operating for oil and gas and constructing tanks, pipes, etc.* ..." *Id.* at 486 (italics added). The court determined that this language did not transfer a fee simple. Rather, because of the expressly stated limitations, it transferred a lesser estate under 21 P.S. § 2.

Such limiting language does not appear in the deed here. Indeed, the language of the deed could not be clearer: "Grantor does hereby *grant and convey* to said Grantee...." (Trial ct. op. at 9, R.R. at 93) (emphasis added). Thus, according to 21 P.S. § 2, the deed executed on April 14, 2000, gave Jocelyn a fee simple interest in the unit.

■ Jocelyn next argues that the trial court incorrectly interpreted the parol evidence rule so as to prevent consideration of a written Straw Party Agreement (Agreement) between Jocelyn and Bivona which was signed contemporaneously with the deed executed April 14, 2000.[8] Joce-

6. The Association further contends that the unit was conveyed in fee simple because the October 9, 2001, deed, by which Jocelyn conveyed the unit to Bivona, Inc., described the real property as "the same premises which Vincent C. Bivona ... by Deed bearing the date the 12th day of April, A.D. 2000 ... granted and conveyed unto Jocelyn Properties, Inc., *in fee"* and there was no recognition of a lesser estate than a fee simple in the deed. (Trial ct. op. at 10, R.R. at 143) (emphasis added).

7. Moreover, cases from the Superior Court of Pennsylvania are not controlling authority over this court.

8. The Agreement states, in pertinent part: WHEREAS, for the compensation enumerated herein, Agent [Jocelyn] has agreed to

lyn, seeks to have the Agreement admitted into evidence to establish that Jocelyn was not an owner of the unit in fee simple and, thus, is not liable for the unpaid condominium assessments, late fees, costs and legal fees, which accrued; Jocelyn contends that, because the deed and the Agreement were signed *contemporaneously,* the Agreement is admissible. We disagree.

The parol evidence rule states:

[A] writing intended by the parties to be a final embodiment of their agreement cannot be modified by evidence of earlier *or contemporaneous* agreements that might add to, vary, or contradict the writing [and that] this rule usu[ally] operates to prevent a party from introducing extrinsic evidence of negotiations that occurred before *or while* the agreement was being reduced to its final written form.

*Black's Law Dictionary* 1149 (8th ed. 2004) (emphasis added).

acquire, hold and subsequently dispose of [the unit] ... in a fiduciary capacity as the agent of Principal [Bivona, Inc.] ...
2. *Obligations and Acquisition.* Principal agrees to assume and satisfy all financial and non-financial obligations with respect to said acquisition and subsequent disposition; and save Agent harmless from any and all expenses in connection with the property to be acquired and sold.
3. *True Ownership of the Property.* Agent acknowledges that Principal is, [and] during the entire existence of this Agreement shall remain, the true and actual owner of the Property.
4. *Nominal Title of Property.* Solely for the purposes of this Agreement, Agent agrees, as an agent, to hold nominal title to the Property for the benefit of Principal from the date of acquisition of the real estate until same is disposed of by Principal.
5. *Function of Agent.* Agent shall have no discretionary authority to exercise any control over the Property, it being expressly understood that Agent has no real interest in, or duties or responsibilities toward, the Property except to perform ministerial tasks

In the absence of fraud, accident or mistake, parol evidence is inadmissible to vary or limit the scope of a deeds express covenants, and the nature and quantity of the interest conveyed must be ascertained by the instrument itself. *Kimmel v. Svonavec,* 369 Pa. 292, 85 A.2d 146 (1952). Jocelyn does not allege fraud, accident or mistake. Furthermore, in construing a deed, the court does not consider what the parties may have *intended* by the language used, but, rather what the words mean. *Id.* In this case, the words in the deed, "Grantor does hereby grant and convey to said Grantee," are clear and unambiguous. (Trial ct. op. at 9, R.R. at 93.) Because there is no fraud, accident or mistake, the Agreement is inadmissible under the parol evidence rule.

Next, Jocelyn argues that the trial court erred by failing to apply the doctrine of res judicata to bind itself by an Order

at the written directions and instructions of Principal....
6. *Payment of Expenses and Receipt of Funds.* Any and all expenses relating to the Property are the sole responsibility of Principal.
7. *Payments on Mortgage, etc.* Principal is the sole responsible party for all principal, interest, and escrow payments with respect to any mortgage on the property and is the sole responsible party to pay all taxes, maintenance, and utility charges which may arise as long as Agent is record title holder....
13. *Releases.* Principal hereby releases Agent, its officers, directors, agents, heirs, successors, and assigns from all claims of reimbursement, contribution, and subrogation, in anyway arising out of any indebtedness or evidence thereof executed by Agent as Principal's nominee.
(R.R. at 169–171.) Thus, if this written Agreement, signed contemporaneously with the deed executed April 14, 2000, were admitted into evidence under the parol evidence rule, it would present a genuine issue of material fact as to a necessary element of Jocelyn's defense, under Pa. R.C.P. No. 1035.2(1).

issued in *Federal National Mortgage Association v. Vincent C. Bivona and Jocelyn Properties, Inc.* (No. 00–18499, Mont. C.P., filed March 11, 2002), stating that Bivona, Inc., not Jocelyn, was the "real owner" of the unit.

■ Res judicata requires the coalescence of four factors: (1) identity of the thing sued upon or for; (2) identity of the causes of action; (3) identity of the persons or parties to the action; and (4) identity of the quality or capacity of the parties suing or being sued. *J.S. v. Bethlehem Area School District,* 794 A.2d 936 (Pa. Cmwlth.2002), *appeal denied,* 572 Pa. 760, 818 A.2d 506 (2003). We note that *Federal National Mortgage Association* was a foreclosure case, in which Federal National Mortgage Association was attempting to foreclose on the unit by suing Bivona and Jocelyn; the Association was not a party to this case. Because the thing sued upon, the causes of action, the parties to the action, and the capacity of the parties suing in this case differ from those in *Federal National Mortgage Association,* none of the four necessary factors is present, and the doctrine of res judicata does not apply.

Lastly, Jocelyn argues that, pursuant to the terms of the Agreement, Jocelyn was not liable for the assessments, late fees, legal fees and costs because it did not have a fee simple interest in the unit, but was merely an agent of Bivona, Inc., the Principal.[9] However, because the Agreement is inadmissible under the parol evidence rule, this argument is without merit.

Because the deed grants and conveys the unit to Jocelyn in fee simple, Jocelyn, as unit owner, is responsible for the unpaid condominium assessments, late fees, costs and legal fees. Accordingly, we affirm.

9. It should be noted that both entities, Jocelyn and Bivona, Inc., appear to have some, if not all, of the same investors in common, as the

signatures of both the Agent and the Principal on the Agreement appear to match. (*See* R.R. at 171.)

*ORDER*

AND NOW, this 6th day of December, 2004, the October 8, 2003, order of the Montgomery County Court of Common Pleas is hereby affirmed.